UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRANDON HALL, DIN 99-B-1020,

        Petitioner,

     -v-                                 04-CV-6011 MAT

                                           **ORDER**

JAMES T. CONWAY, Superintendant
of Attica Correctional Facility,

        Respondent.

_____

## I.   Introduction

Petitioner Brandon Hall ("Hall" or "petitioner") filed this
*pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging his conviction following a guilty plea in
Monroe County Court on two counts of Murder in the First Degree
(N.Y. Penal Law § 125.27(1)(a)(viii)) and two counts of Murder in
the Second Degree (N.Y. Penal Law § 125.25(1)).   Hall was
sentenced to life imprisonment without parole on each count of
Murder in the First Degree, to run concurrent to consecutive
terms of 25 years to life on each count of Murder in the Second
Degree.[1]

_____

[1] This matter has been re-assigned to the undersigned.

## II.  Factual Background and Procedural History

In the early morning hours of October 14, 1998, Brandon Hall was leaving a bar with his step-brother and two friends, Charles Affeldt ("Affeldt"), age 21, and Raymond Ricchueto ("Ricchueto"), age 17.  As the four young men walked to their cars, Hall pulled out a handgun and shot Affeldt in the head at point-blank range. When Ricchueto started to run, Hall shot him multiple times in the leg, chest, and head.  The shootings occurred, seemingly, without any provocation. Meanwhile  Hall's step-brother, Brian Deloach, screamed for Hall to stop shooting.  S. 13.[2]  Hall then fled the scene in his car. S. 13.

Hall pleaded guilty to two counts of Murder in the First Degree and two counts of Murder in the Second Degree for the intentional killings of Affeldt and Ricchueto.  On direct appeal, Hall raised three issues: (1) that the statute governing the plea agreement was unconstitutional; (2) the prosecution abused the subpoena process; and (3) the plea of guilty to charges of Murder in the First Degree and Murder in the Second Degree violated the constitutional prohibition against double jeopardy.  The Appellate Division, Fourth Department concluded that Hall's plea was valid, and that his right to appeal the remaining issues was waived upon his plea of guilty.  Hall's conviction was thus

---

[2] Citations to "S.__" refer to the Sentencing Transcript.

affirmed and further leave to appeal was denied. People v. Hall, 291 A.D.2d 143 (4th Dept.), lv denied 98 NY3d 651 (2002). Additionally, the Appellate Division's denial of Hall's petition for a writ of *error coram nobis* was affirmed. People v. Hall, 306 A.D.2d 957 (4th Dept.), lv denied 100 N.Y.2d 642 (2003).

Petitioner then brought this petition ("Pet.") for habeas relief pursuant to 28 U.S.C. § 2254, stating that, (1) the statute governing the plea agreement was unconstitutional; (2) his conviction violated the constitutional prohibition against double jeopardy; (3) ineffective assistance of appellate counsel; and (4) the prosecution abused its subpoena power, tainting the petitioner's plea. Pet. at ¶ 22 (Dkt. #1).

Respondent answered the petition, arguing: (1) petitioner's claim attacking the constitutionality of the plea agreement is without merit; (2) the claim of double jeopardy is procedurally defaulted as waived by the guilty plea; (3) the ineffective assistance of counsel claim is without merit; and (4) the prosecution's abuse of authority for issuance of a subpoena is a question of state law, and unexhausted to the extent that it implicates a question of federal law. Hall then moved to stay the petition to allow him to return to state court to exhaust his claim for ineffective assistance of trial counsel. That motion

was denied without prejudice. See Hall v. Conway, 2008 WL 2559371 (W.D.N.Y. June 23, 2008).

While his motion to stay was pending, Hall filed a motion in state court seeking to vacate his conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10. He asserted that due to ineffective assistance of trial counsel, (1) he was coerced into pleading guilty by threats of the death penalty; and (2) he was wrongly convicted of two counts of Murder in the Second Degree (as inclusory concurrent counts of Murder in the First Degree). The first ground was summarily denied pursuant to C.P.L. 440.10(2)(c) for failing to raise the issue on direct appeal.[3] The second ground was dismissed for lack of merit, and the state court concluded that Hall had received meaningful representation. People v. Hall, No. 1998-0720 Order, 10/7/2008.[4]

For the reasons that follow, the Court finds that the petitioner is not entitled to habeas corpus relief.

## III. General Principles Applicable to Habeas Review

---

[3] "Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. Law § 440.10(2)(c).
[4] This document was not submitted as part of the bound state court records by the respondent.

## A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091, 124 S.Ct.

962 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state

ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law,'" id. (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Discussion

### A. The Plea Agreement

#### 1. Constitutionality

In his habeas petition, Hall challenges the validity of his plea agreement. Specifically, he contends that his plea is

invalid under the New York Court of Appeals decision in <u>Hynes v.</u> <u>Tomei</u>, 92 N.Y.2d 613 (1998) which decided that certain plea bargaining provisions of the death penalty statute were unconstitutional insofar as they ran afoul of <u>U.S. v. Jackson</u>, 390 U.S. 570 (1970) (holding the death penalty clause of the Federal Kidnapping Act imposes an impermissible burden upon the exercise of a defendant's right to a jury trial). <u>Hynes</u> struck provisions of the law that allowed a defendant to be sentenced to death only after a jury trial and not upon a guilty plea (thereby imposing death only on those who proclaim their innocence and are, subsequently, granted a jury trial). The Court of Appeals concluded that the statute did not coerce guilty pleas, but "needlessly encouraged" them. <u>Hynes</u>, 92 N.Y.2d 613 at 618.

Both the Appellate Division and the state trial court (denying Hall's § 440.10 motion) rejected this contention as without merit. This Court agrees.

<u>Hynes</u>, which petitioner cites as his basis for this claim, specifically held that the excision of the unconstitutional provisions of C.P.L. §§ 220.10[5](e) and 220.30[3](b)(vii) does not prevent pleas of guilty to first-degree murder when no notice of intent to seek the death penalty is pending, since defendants in that situation face the same maximum sentence regardless of how they are convicted. 92 N.Y.2d at 629. In this case, Hall

entered his guilty plea to four of the five counts on the day before a C.P.L. § 250.40 notice of intent to seek the death penalty could have been filed.[5]  The prosecution never filed the notice, and Hall was sentenced to life imprisonment without parole.  As a result, the holding in <u>Hynes</u> does not invalidate Hall's guilty plea because the there was no notice of intent pending at the time the plea was entered.

To the extent Hall claims his guilty plea was "coerced" by the threat of the death penalty, the Court finds this argument to be without merit.  Although <u>United States v. Jackson</u> prohibits imposition of the death penalty under [the defective statute], it does not hold that all guilty pleas encouraged by the fear of possible death are involuntary, nor does it invalidate such pleas, whether involuntary or not.  <u>Brady v. United States</u>, 397 U. S. 742, 745-748, 751 (1970) ("We decline to hold...that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.").  The <u>Brady</u> court reiterated that guilty pleas are valid if both "voluntary" and "intelligent." 397 U.S. 742 at 747

---

[5] The fifth count of the indictment was for Murder in the Second Degree, N.Y. Penal Law §125.25(4).

(citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969)). The record here amply supports the conclusion that Hall knowingly, willingly, and voluntarily pleaded guilty, specifically waiving his right to a jury trial and right to appeal.  P. 3-10.[6]

For these reasons, the Court finds state court's determination that Hall's guilty plea was valid in light of <u>Hynes v. Tomei</u> was not "contrary" to federal law as determined by the Supreme Court in <u>U.S. v. Jackson</u>, and this claim must be denied.

## 2.    Voluntariness

When a criminal defendant has admitted guilt in open court of the offense(s) with which he was charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the "voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann v. Richardson</u>."  <u>Tollet v. Henderson</u>, 411 U.S. 258, 267 (1973) (citations omitted).  Notably, the petitioner expressly stated in his brief to the Appellate Division that he was *not* challenging the voluntariness of his plea.  <u>See</u> Petitioner's

---

[6] Citations to "P.__" refer to the Plea Transcript dated 3/8/1999. To the extent that Hall disputes the voluntary nature of his plea, a more detailed discussion on this issue follows.

("Pet'r") App. Br. at 5. (Dkt. #6).    However, he does suggest

that his plea was coerced by the prospect of the death penalty if

he rejected the plea offering by the prosecution. Pet'r Mem. at 1

(Dkt. #3).

    The issue of voluntariness of the plea was raised in the

state court by means of a C.P.L. § 440.10 motion.    In denying

this motion, the state court found that "[Hall's] claim of being

threatened to plea is belied by the record." People v. Hall, No.

1998-0720 Order, 10/7/2008.  The state court dismissed the motion

on procedural grounds, pursuant to C.P.L. § 440.10(2)(c), because

the voluntariness of Hall's plea was a matter of the record and

could have been raised on direct appeal.  Because the state court

relied upon a state procedural bar rule in disposing of Hall's

claim, the decision rests on an adequate and independent state

ground and therefore federal review of the claim is foreclosed.

See generally Bousley v. United States, 523 U.S. 614 (1998).

    Further, Hall has not demonstrated "cause" that would excuse

his failure to raise the issue in his direct appeal, or

"prejudice" attributable thereto.  Nor has the petitioner made a

claim of actual innocence, which is necessary in order to

establish there would be a "fundamental miscarriage of justice"

if the Court fails to consider the merits of the claim.  See,

e.g. Calderon v. Thompson, 523 U.S. 538, 559 (1998).

**B.    Double Jeopardy**

Hall's second claim in his habeas petition asserts that the constitutional prohibition against double jeopardy was violated when he was convicted of two counts of first-degree murder and two counts of second-degree murder for the intentional killings of Affeldt and Ricchueto.

The respondent argues that Hall's double jeopardy claim is procedurally defaulted because it was waived as part of Hall's guilty plea, and that the claim lacks merit. Respondent's ("Resp't") Answer at 4 (Dkt. #6).  When raised on direct appeal, the Appellate Division, Fourth Department, held that Hall's contentions were waived by his guilty plea, which included a comprehensive waiver of the right to appeal the conviction on all grounds.  People v. Hall, 291 A.D.2d at 146.[7]  Hall contends that his double jeopardy claim survives his guilty plea, relying on Menna v. New York, 423 U.S. 61, 62 (1975) ("Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a

---

[7] In *dictum*, the Appellate Division observed that double jeopardy is implicated only when a defendant is successfully prosecuted or sentenced for the "same offense" under the Blockburger test, not when he is simultaneously prosecuted for a crime and its lesser-included offenses. The double jeopardy bar, therefore, was inapplicable to Hall's conviction. Hall, 291 A.D.2d at 146.

conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." ). Pet'r Answer ¶15 (Dkt.# 9).

The Second Circuit has held that the rights contained in the double jeopardy clause are "personal and can be waived by a defendant." United States v. Mortimer, 52 F.3d 429, 435 (2d Cir. 1995). Where a defendant pleads guilty, it is "an admission that he committed the crime charged against him," rather than merely "a confession which admits that the accused did various acts." United States v. Broce, 488 U.S. 563, 570 (internal quotations and internal citations omitted). Because a guilty plea has this legal effect, "a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he had committed two separate crimes." Broce, 488 U.S. at 570. Therefore, a defendant who signs a plea agreement before raising his double jeopardy claims waives the right to press those claims. Mortimer, 52 F.3d at 435. ("Mortimer's signed plea agreement provided that he would plead guilty to two felonies, thereby effecting waiver of the [double jeopardy] claims he now asserts on appeal"). Further, the Supreme Court has concluded that a defendant's guilty plea waived his double jeopardy claims even if the defendant does not know about the claim at the time of the plea. Broce, 488 U.S. at 572-73.

There are a few exceptions to this general rule that allow an individual who has pleaded guilty to go behind the plea to show a supervening illegality. The <u>Menna</u> Court, for example, held that otherwise valid guilty pleas were permitted to be set aside because the state charges were in violation of double jeopardy. However, <u>Menna</u> speaks to "the very power of the State to bring the defendant into court to answer the charge brought against him." <u>Blackledge v. Perry</u>, 417 U.S. 21, 30 (1974). In <u>Menna</u>, a conviction under a second indictment was set aside because the defendant's right not to be haled into court was violated.[8] No such situation exists here, as Hall was charged with multiple counts arising from one indictment, and he pleaded guilty to four counts of the five-count indictment.[9]

The record indicates that Hall pleaded guilty to avoid a possible death sentence on the first-degree murder charges. The the state court delivered an extensive plea colloquy, in which in Hall waived his right to appeal the conviction "on all grounds", including "any and all New York State or United States constitutional grounds." P. 5-6. As previously discussed, the petitioner has adduced nothing which would invalidate his guilty plea to either the

---

[8] "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." <u>Menna</u>, 423 U.S. at 63 n.2.

[9] The double jeopardy clause does not prohibit a court from imposing separate punishments based on two criminal offenses, even when the offenses are premised on the same course of conduct. <u>Missouri v. Hunter</u>, 459 U.S. 359, 366 (1983).

first or second-degree murder charges or indicate that it was involuntarily made.

Accordingly, the Court finds that the Appellate Division's determination that Hall's double jeopardy claim was waived by his guilty plea was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

## C. Denial of Right to Counsel

### 1. Trial Counsel

In the instant petition, Hall alludes to a deprivation of his right to counsel of his choice at the trial level. Pet'r Mem. at 5-6 (Dkt.#3). He does not, however, raise it as a ground for habeas relief. See Pet. ¶ 22(C) (Dkt.#1). Because the submissions of a *pro se* litigant must be liberally construed, the Court will examine Hall's interwoven Sixth Amendment right to counsel claims, starting with the trial court.[10]

Prior to Hall's indictment, the Monroe County Court assigned two attorneys to represent him in accordance with N.Y. Judiciary Law § 35-b(2) (providing for the appointment of two attorneys where a defendant is charged with first-degree murder). Shortly after the assignment was made, the court learned that one of the attorneys was employed part-time as a clerk to Judge Byrnes of

---

[10] See Haines v. Kerner, 404 U.S. 519 (1972).

the Rochester City Court, before whom a preliminary hearing was scheduled in the case against Hall. State Ct. Records, Mins. 10/19/1998 at 2-3. The County Court stated that it would never have made the assignment if it were aware of the conflict, which the District Attorney refused to waive. Hall claims that the trial court's decision to replace the attorney was against his will and "interfered with his right to counsel without first ascertaining whether his attorney's participation presented an actual conflict." Pet'r Mem. at 5-6 (Dkt. #3).

As noted above, the petitioner raised the ineffective assistance of trial counsel claim in his C.P.L. § 440.10 motion to the state court on June 24, 2008.[11] The court summarily denied the motion, relying on the procedural bar provided by C.P.L. § 440.10(2)(c) because the issue was a matter of the record and Hall unjustifiably failed to raise it on appeal. Had Hall specifically raised this issue in his habeas petition, it would nonetheless have been procedurally defaulted and not reviewable by this Court due to the state court's invocation of a procedural bar.

I now turn to review the petitioner's claim of ineffective assistance of appellate counsel.

---

[11] Because Hall raised the issue in his § 440.10 motion, and the leave to appeal its denial was denied on 5/28/2009, the Court will consider this claim to be exhausted.

## 2. Appellate Counsel

The petitioner claims here, as he did in his motion for writ of *error coram nobis*, that appellate counsel was ineffective for failing to argue that the substitution of trial counsel was inconsistent with New York decisions. Hall's motion advanced, and the Appellate Division rejected, only the theory that appellate counsel had been ineffective for not having raised that point on appeal.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. <u>Id.</u> at 688. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." <u>Id.</u> Second, a petitioner must show that counsel's deficient performance prejudiced him. <u>Id.</u> at 694. To establish the "prejudice" prong of the <u>Strickland</u> test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. <u>Id.</u> at 694. The issue of

prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Mayo, 13 F.3d at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)). The habeas court should not second-guess the

reasonable professional judgments of appellate counsel as to the most promising appeal issues. <u>Jones</u>, 463 U.S. at 754; <u>see also</u> <u>Jackson v. Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F .3d at 533.

Hall, through counsel, raised four issues on direct appeal, despite his waiver of appeal as part of the plea agreement. Although appellate counsel could have included the substitution of trial counsel issue as another ground, it certainly was not unreasonable for him to omit it as the argument was wholly without merit. As the County Court recognized, it would have appeared manifestly unfair for the petitioner to be represented in any City Court proceedings by the City Court judge's current law clerk. Hall was not prejudiced since the additional ground would not have tipped the scales in his favor on direct appeal, nor was appellate counsel's choice to exclude the argument objectively unreasonable. <u>Strickland</u>, 466 U.S. at 688-94. As a result, the state court's denial of Hall's ineffective assistance of appellate counsel claim was not an unreasonable application of, or contrary to, clearly established Federal law.

### D.   Abuse of Subpoena Power

Hall's final claim for habeas relief states that the District Attorney exceeded his authority under C.P.L. § 610.20 by issuing a subpoena duces tecum to gather information he sought to use in deciding whether to seek the death penalty.  The claim rests upon the ground that he was "compelled to plead guilty out of fear" after the state gave the District Attorney "unrestricted subpoena power" to obtain confidential school records.  Pet'r Mem. at 7-8 (Dkt. #3).  These records, he argues, contain information relating to his background, which he "presumed that if the confidential school records were to be used as evidence at trial, it would have prejudiced his defense and deprive him of a fair trial."  Pet'r Mem. at 8 (Dkt. #3).

Trial counsel moved for an order prohibiting the prosecutor from issuing subpoenas duces tecum for the production of any records pertaining to Hall without notice and an opportunity to be heard.  In deciding that motion, the trial court held that a claim of heightened due process does not deprive a prosecutor of his right to issue a subpoena duces tecum as authorized by C.P.L. § 610.20(2). <u>People v. Hall</u>, 179 Misc.2d 488 (Cty. Ct., Monroe, 1998). Hall argued on appeal, as he does now, that the prosecutor's underlying purpose was not sanctioned by subdivision

(1) of C.P.L. § 610.20.[12]  Respondent argues, correctly, that the issue was effectively waived by the petitioner's guilty plea. Even had the claim not been waived, any error in the subpoena process would be a violation of state law only, and does not raise a constitutional claim.  It is well settled that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Finally, to the extent that this claim speaks to the voluntariness of Hall's plea, (a link that is tenuous, at best) there is nothing in the record indicating that his plea was unknowingly or involuntarily made.  See P. 3-10.

For the foregoing reasons, Hall's claim relating to the prosecutor's use of the subpoena must be denied.


**V.  Conclusion**

For the reasons stated above, Hall's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Hall has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g. Lucidore v. New York State Div. of

---

[12] "Any criminal court may issue a subpoena for the attendance of a witness in any criminal action or proceeding in such court." N.Y. C.P.L. § 610.20(1). Petitioner contends that the prosecution used the subpoena as a discovery tool, rather than to compel the production of evidence for use at trial or pending proceeding.  See Pet'r Appellate Br. at 7. (Dkt. #6).

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   July 1, 2009
         Rochester, New York